UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES -- GENERAL

| | | | |
|---|---|---|---|
| Case No. | **SA CV 10-00901-VBF-AJW** | Dated: | April 29, 2014 |

Title: *Niveen Ismail, Plaintiff v. Shelby Ford, Michael Ford, & Julie Fulkerson, Defendants*

---

**PRESENT:** HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

| N/A | N/A |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| N/A | N/A |

**PROCEEDINGS (IN CHAMBERS):     ORDER**
(1) Overruling the Plaintiff's Objections;
(2) Adopting the Report & Recommendation;
(3) Granting the Ford Defendants' Rule 12(b)(6) Motion to Dismiss as to all Federal Claims;
(4) Declining Supplemental Jurisdiction over All State-Law Claims Against the Fords;
(5) Dismissing the Federal Claims With Prejudice and the State-Law Claims Without Prejudice as to the Fords

This is a non-prisoner civil-rights action under 42 U.S.C. § 1983. Only three defendants remain in the case: Michael Ford and Shelby Ford (together "the Fords") and Julie Fulkerson ("Fulkerson") in both her official

and personal capacities.[1] The Fords are the adoptive parents of plaintiff's biological child, while Fulkerson at the relevant times was a social worker employed by the government. The Fords filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss the complaint for failure to state a claim on which relief can be granted (Doc 122), plaintiff filed an opposition brief (Doc 129), and the Fords did not file a reply brief. In March 2014, the Magistrate Judge issued a well-reasoned Report and Recommendation ("R&R") recommending that both the federal-law claims against the Fords be dismissed with prejudice for failure to state a claim and that the Court decline supplemental jurisdiction over all state-law claims against the Fords. Plaintiff filed an objection (Doc 142) on April 16, 2014, and the Fords have not sought leave to file a response to the objections.[2] Preliminarily, the Court will deny

---

[1]

In August-September 2010, plaintiff filed notices (Docs 20 and 38) voluntarily dismissing the complaint as to **defendants New Alternatives, Inc., and Angela Wellborn** pursuant to Fed. R. Civ. P. 41(a)(1).

On May 8, 2012, this Court issued an Order (Doc 74) adopting an R&R (Doc 71) and dismissing the complaint as to **defendant Mary Madison**, whom the complaint identified as an Orange County social worker.

On August 23, 2012, this Court issued an Order (Doc 103) overruling plaintiff's objections, adopting an R&R (Doc 92) and granting the motion to dismiss all of the complaint for lack of subject-matter jurisdiction (pursuant to the *Rooker-Feldman* doctrine) filed by **defendants Orange County, Steve Brodkin, Michael Ryan, Rhea Wren, Colleen Vargas, Margaret Jorth, Tassiana Mervilus, and Dang Vu (collectively "the Orange County Defendants"), as well as defendants Ingrid Harita, Pamela Pantiru, and Victor Molina.**

The undersigned's same August 23, 2012 Order (Doc 103) adopted the R&R's recommendation (Doc 92 at 31) to grant defendant Fulkerson's motion to dismiss the complaint as to all claims except "plaintiff's federal and state[-]law claims against her arising from her alleged disclosure of the [California] Evidence Code section 730 evaluation." Plaintiff noticed an appeal (Docs 104-105), but the Ninth Circuit issued an Order (Doc 107) finding that appeal to be interlocutory and dismissing it for lack of jurisdiction on October 18, 2012.

On November 7, 2012, this Court issued an Order (Doc 108) granting **the Huntington Beach Defendants** (the City of Huntington Beach, police officer Dexter, and police officer Spruill)'s motion to dismiss the complaint for failure to state a claim on which relief could be granted, as unopposed pursuant to LCivR 7-12.

On February 27, 2013, the Ford Defendants filed an answer (Doc 120) to the complaint.

[2]

Federal Rule of Civil Procedure 72(b)(2) expressly authorizes parties to respond to an adversary's objections to a Magistrate Judge's R&R. It provides, in pertinent part, "Within 14 days of being served with a

| MINUTES FORM 90 | Initials of Deputy Clerk ___jmb___ |
|---|---|
| CIVIL - GEN | |

plaintiff's belated request for a Rule 56(d) postponement of a ruling on the Fords' motion. Then, for the reasons that follow, the Court will overrule plaintiff's objections, adopt the R&R, and dismiss the federal claims against the Fords with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). As recommended, the Court will decline supplemental jurisdiction over the state-law claims against the Fords pursuant to 28 U.S.C. § 1367 and dismiss those claims without prejudice to plaintiff filing them in a suitable state court. After today's decision, only one party defendant will remain in the case: Julie Fulkerson.[3]

ANALYSIS OF COUNT FOUR: SECTION 1983 CLAIMS AGAINST THE FORD DEFENDANTS

The only federal claims asserted against the Fords are 42 U.S.C. section 1983 claims in count four and 42 U.S.C. section 1985 claims in count six. In count four, plaintiff claims that the Fords violated her Fourteenth Amendment rights to procedural due process, substantive due process, and the equal protection of the laws. In count six, plaintiff claims that the Fords conspired to deprive her of her Fourteenth Amendment right to the equal protection of the laws on the basis of her racial, religious, and cultural background, her lifestyle, her parenting

---

copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Thus, assuming the Fords received plaintiff's objections by first-class USPS paper mail on about Saturday, April 19, 2014, they still had until about Friday, May 2, 2014 to file a response. The Fords cannot be prejudiced by this Court ruling without waiting for their possible response, however, because the Court today is overruling plaintiff's objections and dismissing all claims against the Fords. Even if the Fords had intended to file a response within that time period, the response could not have led to any more favorable outcome for the Fords than the one ordered today.

[3] Defendant Fulkerson filed a motion for summary judgment (Doc 127). On March 28, 2014, the Magistrate Judge issued an R&R (Doc 140) recommending that the Court grant Fulkerson's motion as to the federal claims and decline supplemental jurisdiction over the state-law claims against her. Plaintiff Ismail filed objections (Doc 143) on April 16, 2014. This Court issued an Order (Doc 144) directing defendant Fulkerson to respond to the objections no later than May 6, 2014.

Defendant Fulkerson filed a response to the objections on April 24, 2014 (Doc 145), and the Court will issue a separate opinion and order ruling on Fulkerson's motion for summary judgment shortly.

MINUTES FORM 90　　　　　　　　　　　　　　　　　　　　　　Initials of Deputy Clerk ___jmb___
CIVIL - GEN

style, her "harmless" obsessive-compulsive traits, her status as a single parent with no support in the United States, and their "greed to steal" her biological son A.I. away because of his "highly adoptable qualities."

   As the Magistrate notes, both section 1983 claims and section 1985 conspiracy claims require the plaintiff to establish that the defendants were acting under color of state law when they committed the challenged actions or omissions.  *See* R&R at 6 (citing, *inter alia*, *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 306, 121 S. Ct. 924, 936 (2001) ("*Brentwood*") and *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Section 1983 is "generally not applicable to private parties", and a section 1983 action may lie against a private party only if they were shown to be "'willful participants in joint action with the state or its agents.'  *See Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S. Ct. 183 (1980)); *see also Brentwood*, 531 U.S. at 306 (cites omitted); *see also Filarsky v. Delia*, – U.S. –, 132 S. Ct. 1657, 1661 (2012) (to be suable as a state actor under § 1983, one's conduct must be "fairly attributable to the State") (cite omitted).  *Accord Mead v. Independence Ass'n*, 684 F.3d 226, 231 (1st Cir. 2012) ("[T]he plaintiff bears the burden of proving that the private party's acts constitute state action.") (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 156, 98 S. Ct. 1729 (1978)).

   **Preliminarily, as the Magistrate notes, the Court must "start with the presumption that private conduct does not constitute governmental action."**  *See* R&R at 6 (citing *Sutton*, 192 F.3d at 835); *see also Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011) (citing *Sutton*, 192 F.3d at 835), *cert. denied*, – U.S. –, 132 S. Ct. 1000 (2012)*; see also Brentwood*, 531 U.S. at 308-09, 121 S. Ct. at 937 (citations omitted).  **The Court would further note that "'[p]rivate parties are viewed as state actors under Section 1983 in only rare circumstances'"**, *Rector v. NY Bank of Mellon*, 2014 WL 631955, *1 (C.D. Cal. Feb. 14, 2014) (quoting *Giulio v. BC CenterCal, LLC*, 2011 WL 3860443, *10 (D. Or. Aug. 10, 2011)).  *Accord Kelly v. Broward Sheriff's Office Dep't of Detention*, No. 13-10327, – F. App'x –, 2014 WL 241747, *3 (11th Cir. Jan. 23, 2014) ("'Only in rare circumstances can a party be viewed as a state actor for section 1983 purposes.'") (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)); *Roberts v. Paige*, 2013 WL 5432501, *6 (E.D. Mich. Sept. 27, 2013)

This is partly because "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *American Manufacturers*, 426 U.S. at 52, 119 S. Ct. at 986 (citations omitted). Rather, the joint-action standard holds that a private party may be sued as a state actor under § 1983 only if the state "so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity" and "knowingly accepted benefits derived from unconstitutional behavior." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003); *see also Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S. Ct. 856 (1961).

**The Magistrate accurately notes (R&R at 7) that plaintiff Ismail has not identified, nor has the Court located, any U.S. Supreme Court or Ninth Circuit decisions holding that merely serving as a foster parent or an adoptive parent transforms a private party into a state actor for purposes of section 1983 or section 1985**, and other Courts of Appeals to address the question have all reasonably concluded that foster parents are not state actors. *See* R&R at 7 (citing published decisions from First, Third, Fourth, and Eleventh Circuits and quoting a district-court decision from the Second Circuit); *accord K.H. through Murphy v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990). *See also, e.g., Lundy v. San Diego County Superior Court*, 2011 WL 292202, *2 (S.D. Cal. Jan. 27, 2011) ("Here, the complaint lacks any allegation that the Colmeneros acted under color of state law. Indeed, assuming the Colmeneros are the foster parents of plaintiffs' daughter, it is unlikely that Plaintiff could make such an allegation. Accordingly, the Court finds that Plaintiff fails to state a claim against Defendants Colmeneros [sic].") (citing Third Circuit's *Leshko*, 423 F.3d at 327); *Stroeder v. Washington*, 130234, *1 (W.D. Wash. Jan. 10, 2011) (stating, without discussion, "[W]ith respect to defendants Brad and Kim Peterson, Plaintiff's former foster parents, the complaint fails to state a claim, as it provides no basis to conclude that the Petersons were state actors.") (citing no authority); *Crone v. Dep't of Human Servs.*, 2012 WL 5832438, *7-*9 (D. Colo. Oct. 5, 2012) (holding that foster parents were not state actors and dismissing section 1983 claims against them on that basis for failure to state a claim on which relief could be granted), *R&R adopted*, 2012 WL 5830713 (D. Colo. Nov. 16, 2012); *Weaver v. Utah*, 2008 WL 4318169, *3 (D. Utah Sept. 15, 2008); *P.G. v. Ramsey Court*, 141 F. Supp.2d 1220, 1226 (D. Minn. 2001); *Lintz v. Skipski*, 807 F. Supp. 1299, 1305-07

(W.D. Mich. 1992); *McCrum v. Elkhart County Dep't of Pub. Welfare*, 806 F. Supp. 203, 208 (N.D. Ind. 1992); *Pfoltzer v. County of Fairfax*, 775 F. Supp. 874, 891 (E.D. Va. 1991).

Specifically, the mere fact that the foster parents here (the Fords) may have signed a contract with the State of California or that they may have operated a foster home which was licensed by the State, does not convert the Fords into state actors. *See Murphy v. Goff*, 2010 WL 2292130, *9 n.12 (W.D. Va. June 7, 2010) (citing *Milburn*, 871 F.2d 474).

In addition to the joint-action test, the Supreme Court has articulated three other tests to determine whether a private party was a state actor when it carried out an allegedly unconstitutional action. As our Circuit put it, "'[t]he Supreme Court has articulated four tests for determining whether a private party's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin v. Fox*, 312 F.3d 423, 444-45 (9th Cir. 2002)). **Plaintiff Ismail has not shown that the foster parents were state actors (with regard to their challenged conduct) under any of the other three Supreme Court state-action tests, either.**

**Under the governmental-nexus test**, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Villegas v. Gilroy Garlic Ass'n Festival*, 541 F.3d 950, 955 (9th Cir. 2008) (*en banc*). "Some of the factors to consider in determining whether there is a 'close nexus' are: (1) the organization is mostly comprised of state institutions; (2) state officials dominate decisionmaking of the organization; (3) the organization's funds are largely generated by the state institutions; and (4) the organization is acting in lieu of a traditional state actor." *Villegas*, 541 F.3d at 955 (quoting *Brentwood*, 531 U.S. at 295-99). It would make no sense, of course, to say that the Ford defendants are "mostly comprised of state institutions." Nor has plaintiff presented evidence that state officials play any decisionmaking role in the Fords' choices and conduct vis-a-vis plaintiff's biological child whom they foster-parented and then adopted, that the Fords' funds are largely generated by state institutions, or that the Fords were acting in lieu of a traditional state actor when they exercised their legal rights under the State's foster-parent and adoption laws. Accordingly, applying *Villegas* and

*Brentwood*, Ismail has not shown any triable issue of material fact as to whether the Fords were state actors under the governmental-nexus test.

**Nor has Ismail developed an argument that the Fords were state actors under the Supreme Court's public-function test[4] or its state-compulsion test.** It would be beyond a court's properly detached "role as a neutral arbiter of justice" to do so for him. *See US v. Kyle*, 734 F.3d 956, 966 (9th Cir. 2013). As the Supreme Court has emphasized, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. US*, 554 U.S. 237, 243 (2008). "To the extent courts have approved departures from th[is] . . . principle", it has usually been for the purpose of protecting a *pro se* litigant's rights, but in *criminal* cases, not civil cases like this one. *See id.* at 244 ("[T]he parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'").

**Nor can Ismail avoid adverse judgment on his § 1983 claim even if the Court construes the complaint as alleging that the Fords were acting under color of *federal* law.** Actions for violations of federal rights under color of federal law are governed by *Bivens*, 403 U.S. 388, but the Supreme Court has held that private defendants cannot be held liable under *Bivens*. *See CSC*, 534 U.S. at 74. Having failed to establish a genuine issue of fact regarding the Fords' status as state actors for purposes of § 1983, Ismail necessarily also has not established a genuine issue regarding the Fords' status as a state actor for purposes of a *Bivens* action. This is because our Circuit holds that "[w]hatever the proper standard for finding governmental action may be, it can be no *more* inclusive than the standard used to find state action for the purposes of § 1983." *Sutton v. Providence St. Joseph Med. Ctr.*, 182 F.3d 826, 844 (9th Cir. 1999) (citation omitted).

ANALYSIS OF COUNT SIX: SECTION 1985 CLAIMS AGAINST THE FORD DEFENDANTS

As the Magistrate Judge notes, 42 U.S.C. section 1985 has three subsections. Section 1985(1), entitled Preventing Officer from Performing Duties, clearly has no application to plaintiff Ismail's claims against the

---

[4] *See Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1339 n.17 (9th Cir. 1987) ("[U]nder the 'public function' test, the Supreme Court has 'found state action present in the exercise by a private entity of powers traditionally exclusively reserved to the State.'") (citations omitted).

MINUTES FORM 90　　　　　　　　　　　　　　　　Initials of Deputy Clerk ___jmb___
CIVIL - GEN

Fords. Section 1985(2), entitled Obstructing justice; intimidating party, witness, or juror, likewise clearly has no application to plaintiff's claims against the Fords. That leaves section 1985(3), entitled Depriving Persons of Rights or Privileges, which provides in its entirety as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy;
>
> in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Paragraph break added. The Magistrate correctly notes Supreme Court precedent holding that the first clause of section 1985(3) requires "some racial or *perhaps* otherwise class-based, invidiously discriminatory animus behind the conspirators' action." R&R at 12 (quoting *Griffin*, 403 U.S. at 102) (other citations to Ninth Circuit omitted) (emphasis added).

Plaintiff does not identify any U.S. Supreme Court or Ninth Circuit published decision which goes beyond the *Griffin* dictum to hold that some invidious animus against some protected class other than a racial class can support a claim under section 1985(2) or 1985(3). *See Libertad v. Welch*, 53 F.3d 428, 446-47 (1st Cir. 1995) (stating that the Supreme Court in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S. Ct. 753 (1993) "did not specifically rule on whether women in general could ever be a protected class"). On the contrary, the Supreme Court thus far has expressly declined to interpret section 1985(3) as available to remedy harm caused by conspiracies that were based on invidious animus against some protected class other than race. *See, e.g., Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 108 (1st Cir. 2008) (stating in *United Bhd. of*

*Carpenters & Joiners v. Scott*, 463 U.S. 825, 103 S. Ct. 3352 (1983), the Supreme Court "explained that § 1985(3) was intended to address racial animus first and foremost" and "rejected the notion that § 1985 protected against discrimination on the basis of union membership"); *Combier v. NY*, 2010 WL 3785130, *16 (S.D.N.Y. Aug. 25, 2010) ("[I]n *United Brotherhood of Carpenters*, the Court observed that 'it is a close question whether section 1985(3) was intended to reach any class-based animus other than animus against Negroes [sic] and those championed their cause, most notably Republicans.'") (citing *United Brotherhood of Carpenters*, 463 U.S. at 836), *R&R adopted*, 2010 WL 3835030 (S.D.N.Y. Oct. 1, 2010).[5]

As the Magistrate notes, plaintiff Ismail in any event "has not alleged any facts plausibly suggesting that the fords conspired to deprive her of her equal protection rights on account of her race or [her] membership in [some other] protected class." R&R at 12. *Cf. Baker-Olson v. Olson*, 2013 WL 5963094, *2 (S.D. Cal. Nov.

---

[5]

The Eleventh Circuit, for example, has held that section 1985(3) provides a cause of action to redress deprivation of rights caused by a conspiracy that was based on animus against one sex or the other, in that case women. *See Lyes v. City of Riviera Beach, Florida*, 166 F.3d 1332, 1337 (11th Cir. 1999) (en banc) ("[The Supreme Court in] *Griffin* and *Scott* left open . . . whether a conspiracy motivated by sex-based animus against women is actionable under section 1985(3). It is clear to us, however, that if *Griffin*'s 'perhaps otherwise class-based, invidiously discriminatory animus' means anything at all – and we think it does – it includes sex-based animus against women."), *judgment entered*, 169 F.3d 1322 (11th Cir. 1999).

A Ninth Circuit panel did state that "[i]t is possible to use section 1985(3) to attack conspiracies against a class defined by sex." *Padway v. Palches*, 665 F.2d 965, 969 (9th Cir. 1982) (citing *Life Ins. Co. of North America v. Reichardt*, 591 F.2d 499, 505 (9th Cir. 1979)); *see also DeSantis v. Pacific Telephone & Telegraph Co., Inc.*, 608 F.2d 327, 333 (9th Cir. 1979) ("Section 1985(e) has been liberated from the now anachronistic historical circumstances of Reconstruction America.").

Even assuming that *Padway* and *DeSantis* are still good law after the Supreme Court's subsequent decision expressing great doubt that section 1985(3) applies to conspiracies against any class other than a racial class, it is of no avail to Ismail on this record. Ismail's complaint here contains no well-pled allegations to state a claim under section 1985(3) based on the premise that the Fords (one man and one woman) conspired with each other and/or with anyone else to deprive Ismail of any constitutional or other rights or privileges-and-immunities based on Ismail's sex. *See* R&R at 10-11 with n.10 (Ismail's allegations that the Fords told social workers that Ismail's phone calls and visits had a negative effect on the foster child and submitted a report to the juvenile court with the assistance of social workers which opposed the child being returned to Ismail, did not plausibly suggest that the Fords and the social workers acted in concert for an unlawful purpose rather than for the obvious lawful purpose of endeavoring to protect the child and serve his best interests).

MINUTES FORM 90  Initials of Deputy Clerk ___jmb___
CIVIL - GEN

7, 2013) (M. James Lorenz) (dismissing section 1983 action for lack of subject-matter jurisdiction, court stated, *inter alia*, "Plaintiff has not alleged specific facts establishing an agreement or meeting of the minds between a state actor and defendant to cause a deprivation of her constitutional rights."). The Court would further note that plaintiff has not identified any Supreme Court or Ninth Circuit decision holding that religious belief or affiliation, "cultural background", "lifestyle", "parenting style", obsessive-compulsive disorder or other psychological or emotional condition, or status as a single parent with no support in the United States, can ever constitute a protected class for purposes of section 1985(2) and (3) or otherwise.

### PLAINTIFF'S OBJECTIONS AND REQUEST FOR RULE 56(e) CONTINUANCE

In their entirety, plaintiff's objections to the R&R reads as follows:

In several of her opposing motions [sic], Plaintiff has repeatedly requested but was never permitted an opportunity to amend, unlike most litigants including those proceeding pro se. Without guidance from the Court, Plaintiff, proceeding in pro se [sic] cannot be expected to know what meets the standard for stating a claim, although in Plaintiff's opinion she has stated sufficient facts to meet that standard, based on a comparison to other complaints that survived a motion to dismiss.

Further, Plaintiff was expecting the R&R to dismiss based on *Rooker-Feldman*, therefore she did not include any additional facts in her opposing motion [sic] to the Fords' Motion to Dismiss, nor was she guided by this Court as to what is needed. There are in fact multiple incidents that Plaintiff can include from the record which when taken as a whole could meet the standard requested by this Court.

Additionally the cost of discovery is minimal in comparison to allowing a civil rights violation to go unpunished. The Fords are also not required to take depositions, so the cost to them could be very minimal. Alternatively, discovery costs can be recovered in certain situations.

As an example of additional information that plaintiff could amend to her complaint includes transcripts from several hearings where Shelby Ford testified that the custody transfer process started from the time A.I. was placed with her. Only someone who conclusively believed that she could be able to adopt the child or who was "promised" that the child would be theirs, would conclude such a thing. Another witness close to her testified similarly that Ford was wanting to get full custody of the child well before Plaintiff's parental rights were terminated.

> Plaintiff does not just "believe" there was a conspiracy, rather she "knows" there was an agreement of the minds between the social workers and the Fords. As a pro se litigant she is at a disadvantage in expressing her claim in a crafty manner that would meet the standard this Court expects but she should be given an opportunity to do so regardless or at least to conduct some discovery.

Doc 142 at 2 (last paragraph break added).

The Court construes this as plaintiff's request for the Court to defer ruling on the Fords' motion so that it can be converted into a summary-judgment motion and she can have more time to conduct discovery and prepare a revised, expanded opposition to that motion. *Accord Grant v. Alperovich*, 2014 WL 1260420, *2 (W.D. Wash. Mar. 26, 2014) ("[S]he argues that summary judgment should not be granted before the close of discovery in civil-rights cases. Interpreting this statement as a request for a continuance under Fed. R. Civ. P. 56(d), . . . ."). "Such a discovery request comes too late and is inappropriate." *Rector v. NY Bank of Mellon*, 2014 WL 631955, *5 (C.D. Cal. Feb. 14, 2014) (Fairbank, J.) (refusing to defer ruling on summary judgment despite *pro se* civil-rights plaintiff's request that the Court compel the defendant to produce documents which plaintiff asserted would prove that the bank lacked standing to foreclose or to evict her). If plaintiff believed that she needed more time to conduct discovery before preparing her brief in opposition to the Fords' motion, "the proper course of action was to file a much earlier request to push back the [dispositive-motion] deadlines and defer ruling on summary judgment pursuant to Fed. R. Civ. P. 56(d)." *Id.*

Rule 56(d) provides, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[6] *See, e.g., Cline v. Industrial Maintenance Eng'g & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000)

---

[6]

"This provision was formerly denominated FED. R. CIV. P. 56(f), *see Theros v. First Am. Title Ins. Co.*, No. 11-35198, 2013 WL 2176468, *1 (9th Cir. May 21, 2013).

Current Rule 56(d) is "'substantively the same as' former Rule 56(f) . . . ." *Rector*, 2014 WL 631955 at *5 n.6 (citing *Michelman v. Lincoln Nat'l Ins. Co.*, 685 F.3d 887, 899 n.7 (9th Cir. 2012)). *Accord Harrison v. Culliver*, 2014 WL 1304010, *9 n.10, – F.3d –, – n.10 (11th Cir. Apr. 2, 2014) ("Effective December 1, 2010, Rule 56(f) was reclassified as Rule 56(d) with no substantial change.") (citing FED. R. CIV. P. 56 Advisory

MINUTES FORM 90                                        Initials of Deputy Clerk ___jmb___
CIVIL - GEN

(plaintiffs could not establish impropriety of summary judgment based on contention that defendants' failure to create ERISA documents was the cause of plaintiffs' lack of evidence, because *inter alia* plaintiffs failed timely to indicate that further discovery was needed before they could oppose motion); *Demaree v. Wal-Mart Stores, Inc.*, 511 F. App'x 660, 661 (9th Cir. 2013) (affirming denial of 56(d) request because it "was vague and the discovery sought did not relate to the legal issues presented on summary judgment.").

"Rule 56(d) reflects the principle that 'summary judgment is proper only after the nonmovant has had adequate time for discovery.'" *Elkins v. Medco Health Solutions, Inc.*, 2014 WL 1663406, *8 (E.D. Mo. Apr. 25, 2014) (quoting *Ray v. American Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010)). As such, Rule 56(d) "should be applied with a spirit of liberality." *US v. Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002)); *accord Hunsinger v. Sko Brenner American, Inc.*, 2014 WL 1462443, *12 (N.D. Tex. Apr. 15, 2014) ("'Rule 56(d) motions are broadly favored and should be liberally granted.'") (quoting *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)). Rule 56(d), however, "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Duffy v. Wolle*, 123 F.3d 1026, 1040 (8th Cir. 1997).

**Applying Rule 56(d) with these principles in mind, the Court determines that plaintiff has not provided a valid justification or excuse for failing to act much earlier to conduct the discovery which she felt was necessary. Less still has she identified any valid reason for failing even to move for an extension of time in which to conduct discovery and file a brief opposing the Fords' motion.** Plaintiff had months to pursue or request further discovery in the period between the Fords' filing of their motion and the Magistrate issuing the R&R. *See Long v. Playboy Enterprises Internat'l, Inc.*, No. 12-57044, – F. App'x –, 2014 WL 1202620, *1 (9th Cir. Mar. 25, 2014) ("Long had several months to conduct further discovery between the submission of PEII's motion for summary judgment and [the] hearing in which additional time was requested."); *Morris v. McHugh*, 2014 WL 1370295, *4 (D. Haw. Apr. 7, 2014) (denying Rule 56(f) request to defer ruling on summary-judgment motion, the court remarked, "Plaintiff has had sufficient time and opportunity to submit

---

Committee Notes to 2010 Amendments).

MINUTES FORM 90  
CIVIL - GEN

Initials of Deputy Clerk ___jmb___

any material that might controvert the materials and statements set forth in Defendant's Concise Statement of Facts. * * * Plaintiff had nearly five months to conduct discovery prior to the filing of his opposition.")[7] The record in our case contains no motions by the plaintiff requesting more time for discovery, and a formal motion was required, because "'references in memoranda and declarations for a need for discovery do not qualify as motions under Rule 56[(d)]'", *Campbell v. US*, 10-36087, – F. App'x –, 2013 WL 6773647, *1 (9th Cir. Dec. 24, 2013) (Tallman, Bea, E.D. Mich. D.J. Stephen Murphy) (quoting *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)). As our Circuit recently reaffirmed, "[f]ailing to diligently pursue discovery in the past is sufficient reason to deny further discovery." *Long*, 2014 WL 1202620 at *1 (citing *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1997)).[8]

**Moreover, plaintiff "failed to submit an affidavit in support of [her] request, as required by Federal Rule of Civil Procedure 56(d)", and "[n]oncompliance with the terms of Rule 56(d)" alone provides "an adequate ground" for a district court to deny a Rule 56(f) request.** *Long*, 2014 WL 1202620 at *1 (quoting *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)); *see also Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006); *cf., e.g., Nakagawa v. County of Maui*, 2014 WL 1213558, *12 (D. Haw. Mar. 21, 2014) ("Plaintiff Nakagawa's effort falls short of the rule's requirements. Counsel's declaration does not identify particular facts that the requested discovery would reveal."). *Accord Pizzuto v. Smith*, 2014 WL 1648269, *12 (N.D. W.Va. Apr. 23, 2014) ("[T]he failure to file an affidavit under Rule 56(d) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'") (quoting *Harod's, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)); *see, e.g., ClinMicro*

---

[7] *Contrast, e.g., Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 2014 WL 813140, *6-*7 (E.D. Cal. Feb. 28, 2014) ("Steadfast has shown it has pursued discovery that might lead to information that LMI . . . was aware of the PCB contamination . . . before the policy period, that the information likely exists, and that [the information] is essential to the opposition to this motion for partial summary judgment.").

[8] A recent published Ninth Circuit decision holds that a district court is not "required . . . to advise *pro se* litigants of their right under Rule 56(d) to seek additional time to conduct discovery before facing a dispositive motion." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013).

MINUTES FORM 90　　　　　　　　　　　　　　　　Initials of Deputy Clerk ___jmb___
CIVIL - GEN

*Immunology Center, Inc., LLC v. PrimeMed, P.C.*, 1515709, *4 (M.D. Pa. Apr. 15, 2014) ("Here, ClinMicro did not file an affidavit or declaration setting forth with specificity the discovery it needed to sufficient oppose PrimeMed's motion for partial summary judgment. As such, resolution of the instant motion need not be deferred to allow for discovery because ClinMicro failed to comply with the express requirements of Rule 56(d).").

In short, "[n]ot even a *pro se* party may without good cause wait until the Magistrate has issued his R&R on summary-judgment motions before asking for more discovery to support or oppose those motions", *Rector*, 2014 WL 631955 at *5, nor is *pro se* status a license to disregard the clear requirements of the Federal Rules of Civil Procedure or our Local Civil Rules. *See King v. Atiyeh*, 814 F.2d 5656, 567 (9th Cir. 1987); *Jacobsen v. Filler*, 790 F.2d 1362, 1364 with n.7 (9th Cir. 1986) ("[P]ro se litigants in the ordinary civil case should not be treated more favorabl[y] than parties with attorneys of record.  *  *  *  *[I]t is not for the trial court to inject itself into the adversary process on behalf of one class of litigant.  *  *  ** Doing so necessarily implicates the court's impartiality and discriminates against opposing parties who do have counsel.") (emphasis added); *see, e.g., In re Erik Benham, Debtor (Benham, Appellant v. First American Title Co. et al., Appellees)*, No. LA CV 13-00205 Doc. 71 at 6 (C.D. Cal. Jan. 3, 2014) (Fairbank, J.) ("[A]ppellant's filings have belabored our circuit's practice of liberally construing *pro se* filings and trying within reason to accommodate *pro se* litigants. The Supreme Court has indeed held that 'when papers are technically at variance with the letter of Rule 3, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.' Nonetheless, . . . appellant's original and amended notices of appeal . . . were not 'the functional equivalent of what the rule requires.'") (internal citation and terminal citation omitted).

**Accordingly, the Court denies plaintiff's belated request for a renewed discovery period and deferral of a ruling on the Fords' motion to dismiss, which the Court declines to convert into a motion for summary judgment.**[9]

---

[9]"[T]he standard of review of denial of a motion for further discovery under Rule 56(d) is abuse of discretion, and 'a trial court's exercise of discretion will rarely be disturbed.'" *Johnson v. Hewlett-Packard Co.*, 546 F. App'x 613, 616 (9th Cir. 2013) (quoting *Garrett v. City & County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987)).

MINUTES FORM 90               Initials of Deputy Clerk ___jmb____
CIVIL - GEN

Otherwise, plaintiff's objections are conclusory and unsupported by specific evidence or precedent. Plaintiff fails to identify any defect of law, fact, or logic in the Report's conclusions that his section 1983 and section 1985 claims against the Fords lack merit.

DECLINING SUPPLEMENTAL JURISDICTION OVER STATE-LAW CLAIMS

As the Supreme Court has stated,

> * * * [W]hether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that jurisdiction. [cites omitted]
>
> With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. A district court's decision whether to exercise that jurisdiction is purely discretionary.

*Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) (citing 28 U.S.C. § 1367© and *Osborne v. Haley*, 549 U.S. 225, 245 (2007) and *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Our Circuit holds that while the district court is not *required* to dismiss the state-law claims after all federal claims have been resolved, it "ordinarily" should do so. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (*en banc*) (citing *Gibbs*, 383 U.S. 715, 86 S. Ct. 1130)). The Supreme Court has specified factors to consider when deciding whether to exercise supplemental jurisdiction, including judicial economy, convenience, fairness, and comity. *See Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1309 (9th Cir. 1992) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7 (1988)). As a sister court stated,

> [T]he *Carnegie-Mellon* factors weigh in favor of remand. Only state law claims remain [against these two defendants], and the case has yet to proceed to trial. Judicial economy does not favor continuing to exercise supplemental jurisdiction. Nor do the comity and fairness factors weigh in favor of exercising supplemental jurisdiction since *"[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by securing for them a surer-footed reading of applicable law."*

*Wilson v. Gordon & Wong Law Group, P.C.*, 2013 WL 6858975, *6 (E.D. Cal. Dec. 23, 2013) (quoting *Gibbs*, 383 U.S. at 726) (emphasis added). Therefore, "[a]s none of the parties raise[s] any extraordinary or unusual circumstances suggesting that the court should retain jurisdiction over plaintiff's state-law claims in the absence

MINUTES FORM 90　　　　　　　　　　　　　　　　　　　Initials of Deputy Clerk ___jmb___
CIVIL - GEN

of any federal claims, *Molaris v. County of Sierra*, 2012 WL 170159, *4 (E.D. Cal. Jan. 19, 2012), the Court will exercise its discretion to decline supplemental jurisdiction over the state-law claims . . . ." as recommended by the Magistrate's Report.  *See Ismail v. Freeman*, 936 F. Supp.2d 1157, 1169 (C.D. Cal. 2012).[10]

ORDER

Defendants Michael Ford and Shelby Ford's motion to dismiss the second amended complaint **[Doc # 122] is GRANTED in part and DENIED without prejudice in part**.

Pursuant to Fed. R. Civ. P. 12(b)(6), all federal-law claims against defendants Michael Ford and Shelby Ford are **DISMISSED with prejudice** for failure to state a claim on which relief could be granted.

Pursuant to 28 U.S.C. § 1367, the Court **DECLINES supplemental jurisdiction** over all state-law claims against defendants Michael Ford and Shelby Ford.  All state-law claims against defendants Michael Ford and Shelby Ford are **DISMISSED *without* prejudice** to their filing in an appropriate state court.

The complaint remains pending against only one party defendant:  Julie Fulkerson.
This is not a final and immediately appealable order, because it does not dispose of all remaining claims against all remaining defendants.[11]  IT IS SO ORDERED.

---

[10]

When a district court declines supplemental jurisdiction over state-law claims, the dismissal of those claims is without prejudice.  *See Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (citation omitted).

[11]

*See generally* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all *final* decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court.") (emphasis added); *accord, e.g., Smith v. Alford*, 2014 WL 1345407, *2 (W.D. Mich. Apr. 4, 2014) ("Plaintiff attempted to appeal this non-final judgment to the Court of Appeals, but that court dismissed the appeal for lack of jurisdiction, as the . . . Order did not dispose of all claims as to all parties.").  This is not the type of interlocutory order which may be immediately appealed under 28 U.S.C. § 1291(a), and the Court declines to certify it for immediate appeal under 28 U.S.C. § 1292(b).

MINUTES FORM 90                                                    Initials of Deputy Clerk ___jmb___
CIVIL - GEN